UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD JONES,<br><br>        Plaintiff,<br><br>    v.<br><br>C. CLARK, et al.,<br><br>        Defendants. | No.  2:14-cv-0987 CKD P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983.  This action proceeds on the First Amended Complaint (FAC), which alleges that defendant Stephens used excessive force in violation of the Eighth Amendment when plaintiff was incarcerated at Mule Creek State Prison.  (ECF No. 9.)  Pending before the court is defendant's August 12, 2015 motion for summary judgment (ECF No. 44), which has been briefed by the parties.  (ECF Nos. 61 & 63.)  For the reasons discussed below, the undersigned will recommend that defendant's motion be granted.

II. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Discussion

A. Facts

1. Plaintiff's Allegations

In his verified complaint[1], plaintiff alleges as follows:

On September 25, 2012, defendant Stephens "forced me to the ground when I had a [cane] for lower back problems." (FAC at 13.[2])

On that day, during an alarm, plaintiff was sitting on a bench playing cards when defendant approached him and asked why he wasn't on the ground for the alarm. (Id. at 29-36.) Plaintiff explained that he had severe back problems, which allegedly was common knowledge among the correctional officers. (Id. at 30-31) After "harassing" plaintiff, defendant placed him in handcuffs and escorted him to the program office. (Id. at 31.) Holding plaintiff's cane, defendant forced him to "speed walk." (Id.) When plaintiff explained that he couldn't walk that

---

[1] A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000).

[2] Citations are to page numbers assigned by the court's docketing system.

3

1   fast, defendant and another officer "took me down," hurting plaintiff's back, shoulder, knee, and
2   arm. (Id.)  Plaintiff "never resisted or disobeyed a direct order.  My only fault was being cane-
3   dependent, [unable] to walk as quickly as Officer Stephens demanded."  (Id. at 32.)

4   2. Evidence on Summary Judgment

5       Unless otherwise noted, the undisputed facts are as follows:

6       At all relevant times, plaintiff was a California prisoner housed at Mule Creek State
7   Prison.  (DUF 1.[3])  Defendant was a Correctional Officer at MCSP.  (DUF 2.)

8       On September 25, 2012, plaintiff was housed on the lower tier in Unit 3, Facility A, cell
9   132.  (DUF 3.)  Defendant Stephens was working as a Security Patrol Officer in Facility A.[4]
10  (DUF 4.)  Around 10:00 a.m., an Active Code 1 went off on Facility A yard that requires inmates
11  to sit on the ground.  (DUF 9.)  Activated by the viewing officer, this alarm indicates a small fight
12  or incident on the yard.  (Id.)

13      When the alarm went off, plaintiff was sitting at a table on the Facility A yard, playing
14  cards.  (DUF 8.)  Inmates who are unable to sit down for documented medical reasons are issued
15  a limited mobility vest.  (DUF 9.)  Plaintiff did not have a limited mobility vest.  (DUF 8.)
16  Defendant approached plaintiff about his failure to sit down during the Code 1.  (DUF 11.)

17      After speaking with plaintiff, defendant went to the Facility A Program Office to inform
18  Sepulveda of plaintiff's failure to sit down during the Code 1.  (DUF 13.)  Afterward, defendant
19  and Sunderland approached plaintiff to order him to his housing unit.  (DUF 14-15.)  Plaintiff was
20  hostile and agitated and used profanity.  (DUF 16; Pl.'s Depo. at 14:6-16.)  Defendant placed
21  plaintiff in handcuffs and took his cane.  (DUF 16; Pl.'s Depo. at 16:5-10.)

22      Plaintiff contends that, during the escort, defendant was pulling him faster than he could
23  walk without his cane.  (Pl.'s Depo. at 10:16-11:3.)  It is undisputed that plaintiff was "agitated"
24  and "mouthing off" – i.e., yelling profanities at defendant – during the escort.  (DUF 17-18; Pl.'s

---

[3] (ECF No. 44-3.)

[4] Non-defendant Officer Sunderland was working as a Security Patrol Officer in Facility A, and non-defendant Sergeant Sepulveda was working as the Facility A yard Correctional Sergeant. (DUF 5-6.)

Depo. at 16:5-10.) Defendant and Sunderland contend that plaintiff pushed his weight against defendant (DUF 18-19), while plaintiff asserts he lost his balance because he didn't have his cane and was walking over a curb.[5] (Pl.'s Depo. at 16:11-21.)

Defendant and Sunderland contend that plaintiff refused to enter the Facility A Program Office Door. (DUF 22.) When defendant and Sunderland attempted to put plaintiff against the wall next to the office, plaintiff turned his head and said, "What the fuck are you doing?" (DUF 22-23; Pl.'s Depo. at 11:5-20.) Defendant and Sunderland took plaintiff to the ground. (DUF 24.) Plaintiff testified that defendant "flipped" and "slammed" him to the ground (Pl.'s Depo. at 17:22-24:13), while defendant asserts that he placed his left leg in front of plaintiff's and used his body weight to take him to the ground, causing plaintiff to land on his stomach and left shoulder. (DUF 24.)

Plaintiff continued to twist his body, kick his feet, and pull away from staff while on the ground. (DUF 25.) Sepulveda responded to the scene, placed his knee on plaintiff's elbow to prevent him from raising his arm, and called a second Active Code 1. (DUF 26.) Sunderland placed his knee in plaintiff's back to prevent him from twisting. (Id.) Plaintiff continued to twist and yell at staff.[6] (Id.; Pl.'s Depo. at 11:22-12:2.)

---

[5] Plaintiff submits declarations from three inmate witnesses stating that the curb was a "trip hazard" and that plaintiff stumbled backwards when Stephens pushed him over it during the escort. (ECF No. 61 at 17-20.)

[6] In an incident report prepared that day, Sunderland stated that during the escort, plaintiff

> began to pull away from my grip by leaning his upper body toward Stephens. As we got closer to the program office, Jones began to slow down his pace of walking and began to yell, 'why you fucking with me' at Stephens. Jones stopped walking and then refused to enter the program office. At the time I assisted in attempting to place Jones against the wall. . . . Jones attempted to pull away from me and turn toward Stephens. I gave Jones a direct order to 'quit resisting' with negative results. . . . [U]sing my body weight I assisted Officer Stephens in taking Jones to the ground. While on the ground Jones began to twist his body and pull away from staff. I then gave Jones another direct order to 'quit resisting' with negative results. I then placed my knee in the center of Jones' upper back . . . While on the ground Jones continued to twist his body and yell profanities at staff. Responding staff . . . placed Jones in leg restraints at this time.

(Sunderland Dec., Ex. B.) Similarly, a Rules Violation Report prepared by defendant notes that

1    Plaintiff was placed in leg restraints and taken to a holding cage within the Facility A
2  Program Office.  (DUF 27; Pl.'s Depo. at 27:3-20.)  His leg restraints were removed, and he
3  remained there for about an hour before being examined by a nurse.  (DUF 27-29; Pl.'s Depo. at
4  27:19-30:14.)  The nurse noted abrasions and reddened areas on both plaintiff's wrists.  (DUF
5  30.)  She also noted scratches and his complaint of pain in both knees.  (Id.; see ECF No. 44-4 at
6  19.)  She did not note any other injuries to plaintiff.  (DUF 31.)  Plaintiff had a swollen elbow and
7  shoulder as a result of the incident, and was put in a sling for two weeks.  (Pl.'s Depo. at 40:15-
8  41:7; see ECF No. 61 at 11-16 (medical reports).)  Plaintiff has not seen a nurse or physician
9  about his injuries from the incident in more than two years.  (DUF 35.)

10    Plaintiff was found guilty of violating CCR § 3005(d)(1), Resisting Staff Requiring the
11  Use of Force (Physical), and assessed a 90-day loss of behavioral credits.  (DUFs 37-38; see ECF
12  No. 44-4 at 15.)  Plaintiff has not filed a petition for writ of habeas corpus or any other action to
13  challenge his disciplinary conviction.  (DUF 38.)

14  B.  Legal Standard for Excessive Force

15    The Eighth Amendment prohibits cruel and unusual punishment.  "[T]he unnecessary and
16  wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth
17  Amendment."  Whitely v. Albers, 475 U.S. 312, 319 (1986).  "The Eighth Amendment's
18  prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition
19  de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the
20  conscience of mankind."  Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (quoting Hudson v.
21  McMillian, 503 U.S. 1, 9 (1992)) (internal quotations omitted).

22    Not every malevolent touch by a prison guard gives rise to a federal cause of action.
23  Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted).  In
24  determining whether the use of force was wanton and unnecessary, courts may evaluate the extent

---

25  plaintiff yelled profanities at him before and during the escort, pushed back as they walked, and
26  refused to enter the Program Office.  (Stephens Decl., Ex. A.)
   The content of these reports is largely undisputed by plaintiff.  Rather, he argues that
27  defendant's account omits (1) his stumble over a dangerous curb, (2) the fact that he had an
   accommodation chrono for mobility problems, and (3) the fact that, during the escort, he was in
28  handcuffs.  (ECF No. 61 at 3-4.)

1  of the prisoner's injury, the need for application of force, the relationship between that need and
2  the amount of force used, the threat reasonably perceived by the responsible officials, and any
3  efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation
4  marks and citations omitted). While the absence of a serious injury is relevant to the Eighth
5  Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of
6  force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37
7  (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than
8  the resulting injury which ultimately counts. Id. at 1178.

9  C. Defendant's Motion
10 1. Heck Bar
11     Defendant first argues that plaintiff's excessive force claim is barred by his disciplinary
12 conviction for resisting staff requiring the use of force, arising out of the same incident under the
13 doctrine of Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the U.S. Supreme Court held that
14 a convicted criminal may not bring a civil suit questioning the validity of his conviction until he
15 has had the conviction set aside. See 512 U.S. at 486-487. Defendant argues that Heck and its
16 progeny prevent a state prisoner from pursuing a § 1983 action that, if successful, would
17 necessarily imply the invalidity of a disciplinary conviction resulting in the loss of good time or
18 credit. See Edwards v. Balisok, 520 U.S. 641, 648-49. Any challenge to such a conviction must,
19 instead, be brought by a petition for writ of habeas corpus.
20     However, in Smithart v. Towery, 79 F.3d 951, 952-53 (9th Cir. 1996), the Ninth Circuit
21 held that where "a successful section 1983 action for excessive force would not necessarily imply
22 the invalidity of [plaintiff's] arrest or conviction, Heck does not preclude [plaintiff's] excessive
23 force claim." In prisoner cases, courts have since recognized that "it is possible for an excessive
24 force action and a battery conviction to coexist without running afoul of Heck[.]" Calloway v.
25 Oaks, No. 1:08-cv-01896 LJO GSA PC, 2013 WL 4586442, at *3 (E.D. Cal. Aug. 28, 2013). In
26 Simpson v. Thomas, No. 2:03-cv-00591 MCE GGH, 2009 WL 1327147 (E.D. Cal. May 12,
27 2009), the district court denied summary judgment to defendant on the ground that plaintiff's
28 excessive force claim was barred by his battery conviction arising out of the same incident. The

7

district court reasoned:

> Even if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery if Plaintiff also used excessive force. See Hernandez, 624 F.2d at 937-938; see also Lockett v. Suardini, 526 F.3d 866, 873 (6th Cir. 2008) (Defendants "conceded at oral argument that [plaintiff's] Eighth Amendment excessive-force claim [was] not barred by Heck because [plaintiff's] disruptive and threatening behavior ... would not justify the allegedly excessive force that [plaintiff] was subjected to, even if [plaintiff] was in fact guilty of assault."); Huey v. Stine, 230 F.3d 226, 230 (6th Cir. 2000) (noting in dicta that "[i]n general, the federal courts hold that Eight Amendment claims do not run afoul of Heck because the question of the degree of force used by a police or corrections officer is analytically distinct from the question whether the Plaintiff violated the law."). Accordingly, a verdict in favor of Plaintiff on the excessive force claim does not necessarily invalidate his disciplinary conviction.

Id. at *4.

Here, though plaintiff was convicted of resisting staff requiring the use of force, the amount of force used could still be excessive (i.e., sadistic and malicious) under the Eighth Amendment. Thus the undersigned will not recommend that plaintiff's claim be denied as Heck-barred.

2. Genuine Dispute of Material Fact

While plaintiff admits he was agitated and cursing at defendant prior to being handcuffed, during the escort, and on the ground, he asserts that defendant's use of force during the incident was excessive. Plaintiff faults defendant for requiring him to walk faster than he was able without a cane, then "slamming" him to the ground and restraining him with the aid of Sunderland and Sepulveda.

However, it is undisputed that plaintiff was at least somewhat resistant to defendant's control. In addition to yelling and cursing throughout the encounter, he stumbled or pushed back against defendant during the escort, turned his head and spoke angrily to defendant when he was placed against a wall, and continued to twist his body, kick, and pull away while on the ground. The record indicates that Sunderland twice told plaintiff to "quit resisting." Ultimately it took three officers, including defendant, to subdue plaintiff and place him in leg restraints.

////

Afterward, plaintiff was examined by a nurse and found to have abrasions on his wrists and knees; he later experienced swelling in his elbow and shoulder. These minor injuries are consistent with being handcuffed and forcibly taken the ground, but do not suggest the force applied was malicious or excessive.

Viewing the facts in the light most favorable to plaintiff, and assuming that defendant made plaintiff walk quickly without a cane and forcefully took him to the ground, the record does not raise a genuine possibility that defendant's use of force was malicious or sadistic under the Hudson factors. Thus the undersigned will recommend that defendant's motion for summary judgment be granted.[7]

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 44) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 21, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / jone0987.sj

---

[7] The undersigned does not reach defendant's argument for qualified immunity.